[Civ. No. 11407. Second Appellate District, Division One.—May 20, 1938.]

GEORGE C. GERBERICH et al., Respondents, v. SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Appellant.

RALPH GISH, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Appellant.

MARGUERITE OLIVERA, as Special Administratrix, etc., Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Respondent.

MARGUERITA OLIVERA VAN KLAVEREN, Respondent, v. SOUTHERN CALIFORNIA EDISON COMPANY, LTD. (a Corporation), Appellant.

Roy V. Reppy and E. W. Cunningham for Appellant Southern California Edison Company, Ltd.

Eckman & Lindstrom and Morton L. Barker for Appellant Marguerite Olivera as Special Administratrix.

Leonard E. Thomas, Harold A. Jones, Eckman & Lindstrom, Morton L. Barker, Elbert E. Hensley and John H. Klenke for Respondents.

DORAN, J.—Before the trial in the lower court, four separate actions growing out of the same accident were consolidated.

The Gerberich action was brought by parents to recover damages for the death of their minor daughter.

The action in which Marguerite Olivera has been substituted as special administratrix in the place of Walter E. Olivera, who died before the case was brought to trial, was brought to recover loss of earnings and for medical treatment to a minor daughter (Marguerita Olivera Van Klaveren), injured in the accident.

The cases in which Ralph Gish and Marguerita Olivera Van Klaveren are plaintiffs, were brought to recover damages for personal injuries sustained in the same accident.

The jury returned a verdict for the respective plaintiffs and a judgment against defendant Southern California Edison Company, Ltd., (hereinafter referred to as "Edison Company" or "defendant") was entered thereon. Defendant's motion for judgment notwithstanding the verdict was denied as to three of the plaintiffs and was granted as to Marguerite Olivera as special administratrix, on the sole ground of abatement; that is to say, that said action did not survive the death of Walter E. Olivera.

The Southern California Edison Company, Ltd., appeals from the judgment as well as from the order denying said motion for judgment notwithstanding the verdict.

Marguerite Olivera, as special administratrix, appeals from the judgment notwithstanding the verdict in favor of plaintiff.

One of the actions thus merged into the consolidated case, namely, the. Gerberich action, had been once tried previous to the order of consolidation, that trial resulting in a judgment for defendant based upon an instructed verdict. This judgment was reversed by the Supreme Court on appeal. (*Gerberich* v. *Southern Calif. Edison Co.*, 5 Cal. (2d) 46 [53 Pac. (2d) 948].) Said opinion in the Gerberich case described the accident, out of which these actions resulted, as follows:

"At about 9:30 o'clock on a Sunday evening in midsummer deceased was riding with a young man in the rumble seat of an automobile driven by one Renne. The party consisted of two couples from seventeen to nineteen years of age, on their way to the beach. They proceeded south on Alameda street to a point opposite the intersection of Gage avenue (which latter street was not cut through on the west side of Alameda where the accident occurred), and there collided with a pole erected and maintained by defendant in the dirt portion of the highway, causing injuries which resulted in the death of deceased.

"Alameda street consisted of a concrete pavement twenty-four feet wide, flanked on each side by a two-foot strip of macadam and unpaved the balance of the width of the highway, which was a total of forty feet except for an added twenty-foot strip on the west side, starting at a point opposite the north curb of Gage avenue and extending about 120 feet south. The pole was 1.3 feet in diameter and its center was placed six feet from the edge of the concrete, or four feet from the edge of the macadam shoulder, and slightly north of a point opposite the prolongation of the south curb of Gage avenue. The pole was black, unmarked and bore no light. It was a 'junction pole', erected to support wires running north and south on Alameda and east on Gage.

"There was evidence that the dirt portion of the road, including the twenty feet additional width at that point, was frequently traversed on both sides of the junction pole when

traffic was somewhat congested. The nearest street light was at the next corner. The pole could ordinarily be seen at night by a driver going south, when within twenty-five to thirty feet of it. North of the pole a few feet was a post painted white and bearing a sign to direct motorists entering Alameda from Gage avenue.

"As Renne's car, going south, approached the intersection of Gage avenue he swung to the left to pass another southbound car. As he came abreast of it a third car entered Alameda from Gage, making a left turn to go south. To avoid hitting this third car Renne swung back sharply to the right, then to the left and back to the right, running onto the dirt shoulder on the west side of Alameda and going about forty feet ahead on the dirt until he hit the pole."

It should be further noted at this point that Renne, the driver of the car, is not a party plaintiff in any of the aforesaid actions, but is named as a party defendant in the action by Ralph Gish.

Appellant Edison Company contends, in substance, that evidence offered by plaintiffs was improperly admitted; that opposing counsel were guilty of misconduct; that defendant's motion for a directed verdict was improperly denied; that instructions were erroneously given and refused; that there is not sufficient evidence of negligence to support the verdict; and that the motion for judgment notwithstanding the verdict should have been granted.

■ The contention first above mentioned, namely, that evidence offered by plaintiffs was improperly admitted, is based on the trial court's ruling, over the objection of appellant, that certain evidence of previous accidents was relevant. In that connection it has been held, "The frequency of accidents at a particular place would seem to be good evidence of its dangerous character; at least, it is some evidence to that effect. . . . It is in effect contended, however, that, before previous accidents may be shown, it must be made to appear that such previous accidents occurred under circumstances precisely similar to those characterizing the later or subsequent one, and that no such showing was made in this case. We think, though, that the rule is that the previous accidents need only be similar in their general character to the one in question to render proof of them admissible." (*Long* v. *John Breuner Co.*, 36 Cal. App. 630, 640 [172 Pac. 1132]; see, also,

*Magnuson* v. *City of Stockton,* 116 Cal. App. 532, 535 [3 Pac. (2d) 30]; *McCormick* v. *Great Western Power Co.,* 214 Cal. 658, 664 [8 Pac. (2d) 145, 81 A. L. R. 678].) It is urged by appellant, however, that the previous accidents were different in their general character from the accident out of which the pending litigation arose. Primarily the determination of the question raised by defendant's objection to the introduction of such testimony was addressed to the discretion of the trial judge. From an examination of the evidence in question it does not appear that the aforesaid rulings amounted to an abuse of discretion.

It is further urged by appellant that the injurious effect of such asserted erroneous admission of testimony relative to other collisions was augmented by the argument of plaintiffs' counsel to the jury. It is claimed by appellant that such argument was to the effect that defendant had failed to prove that no claims or suits, other than the ones involved herein, had been filed against defendant as a result of automobiles colliding with this pole, and that by failing so to do, defendant necessarily admitted that claims of this character had been filed and that other actions at law had been brought against the defendant growing out of other automobiles colliding with said pole. In this connection it is further urged that appellant objected to such argument, assigned the same as prejudicial misconduct and then and there requested the court to instruct the jury on the subject, which request was refused. Respondents, on the other hand, deny that such a request was made.

In support of a motion for a new trial, the foregoing incident was alleged as an irregularity in proceedings of the court and adverse party and, in substance, as a sufficient cause for vacating the verdict. The motion for a new trial was denied by the trial judge.

It appears to be well settled that a judgment will not be disturbed on appeal on the grounds of misconduct unless it appears that such misconduct resulted in a miscarriage of justice (*Robinson* v. *Western States Gas & Elec. Co.,* 184 Cal. 401, 407 [194 Pac. 39]; *Ward* v. *De Martini,* 108 Cal. App. 745, 751 [292 Pac. 192]; *Gregoriev* v. *Northwestern Pac. R. R. Co.,* 95 Cal. App. 428, 440 [273 Pac. 76]), and in that connection it has been declared that, ''The trial judge is in a much better position than an appellate court to deter-

mine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong.'' (*La-Fargue* v. *United Railroads,* 183 Cal. 720, 724 [192 Pac. 538].) It does not appear, from an examination of the record, that the argument of plaintiffs' counsel to the jury, about which appellant complains, amounts to that prejudicial misconduct which, under the circumstances herein recited, would justify a reversal.

Appellant's contention, namely, that defendant's motion for a directed verdict was improperly denied, is based on the proposition that the undisputed evidence proved the existence of a vested right in appellant in the nature of an easement to maintain the pole in question as the same was located at the time of the accident, and that such easement was not subject to the highway, but that the highway was subject to the easement. It is argued that such easement being prior in right to the highway, appellant was ''under no obligation to remove its pole or light it or otherwise safeguard it from being struck by automobiles.''

It is with regard to the foregoing contention of appellant that, as appellant further contends, certain instructions were erroneously given and refused. The court instructed the jury, in part, that irrespective of whether the location and maintenance of the pole in question was ''under easement or under franchise, or a combination of the two, it was the duty of the defendant, Southern California Edison Company, Ltd., to at all times exercise ordinary care in the maintenance of its power line, including the pole in question, to avoid injuring others lawfully using the highway''. That, ''in the absence of fee ownership of the property, having merely the right to maintain its pole, the pole was lawfully there, but whether or not in the maintaining thereof the defendant should have done anything that the defendant did not do in warning or protecting the public as against the maintenance of said pole is purely a question of fact for you, the court's instruction of law being that the defendant owed the public the duty of using ordinary, reasonable care in regard to the maintenance of the pole, and, of course, reasonable care is always relative to the circumstances, likewise negligence. Negligence is not intrinsic or absolute, but always relates to

the circumstances of time, place or persons." Further quoting, "If you find from the evidence and a preponderance thereof that it was reasonably to be anticipated that drivers of automobiles proceeding south on Alameda street at the intersection of Gage avenue and Alameda street at night might strike the pole maintained at this place by the defendant, Southern California Edison Company, then I charge you it was the duty of the Southern California Edison Company to exercise ordinary care to prevent such accidents. Where death or injury may be caused by an agency lawfully in use, ordinary care requires that every reasonable means must be used to prevent it." "You are instructed that if in the exercise of ordinary care the defendant, Southern California Edison Company, should have placed a warning signal or device of some kind on the pole in question in order to avoid collisions with the said pole by persons lawfully using Alameda street, then you are instructed that the defendant, Southern California Edison Company, was guilty of negligence. . . . The only thing I am telling you is that the law is that it was the duty of the Southern California Edison Company in maintaining that pole to use ordinary care in the maintenance of that pole so that injury would not come to others; they must use ordinary care, do that which a reasonable person under like circumstances would do." " . . . The fact that a pole was erected and maintained at a location where it could be and was hit by a vehicle does not in and of itself indicate that defendant was guilty of any negligence in maintaining a pole at such a location. Neither was defendant bound to find the best possible location for its poles, but only to use, in so doing, such degree of care as would a man of ordinary prudence under the same or like circumstances. If you find that the pole in question was so located and maintained, defendant was not guilty of any negligence in so doing, even though it was possible that automobiles using Alameda street might collide with the pole thus located and maintained. The use of a highway for vehicular traffic and for placing poles along the sides thereof for the purpose of lighting the highway and of supplying the inhabitants of the County with electric energy, are both proper street uses, and each use must, under the regulations prescribed by law, accommodate itself to the other use." "You are further instructed that the issue as to whether or not the pole was being

negligently maintained at the time of the accident is properly a question of fact for the jury.''

Defendant offered instructions which were refused, and about which refusal appellant now complains, which were, in substance, to the effect that defendant contended that it was possessed of the right to maintain the pole in question at the place where it was located; that this right came into existence prior to the dedication of the highway for highway purposes; that defendant had not at any time joined in the dedication or surrendered this right and that the same was in full force and effect on the day of the accident; that all persons using Alameda Street, the street upon which said pole was located, did so subject to this right and at their own peril so far as the pole in question was concerned; and that if the jury believed from the evidence that defendant had such right that the verdict should be in favor of defendant; further, that no verdict should be returned against the defendant because it did not place or maintain lights on or near said pole.

In other words, it appears to be appellant's position that being the owner of an easement, it cannot be charged with negligence for not moving its pole to another location, even though under the circumstances ordinary prudence would have suggested such action, and that it was under no obligation to maintain a light on the pole or keep it marked or barricaded so as to prevent automobiles from running into it.

The foregoing instructions, quoted at the expense of brevity, clearly indicate that the trial court rejected defendant's theory and thereby limited the issue to the question of negligence. A similar question was presented in *Anderson* v. *Southern Cal. Edison Co.*, 77 Cal. App. 328 [246 Pac. 559], in which case the court announced the rule as follows: ''The conclusion of appellant that plaintiff was a trespasser is based upon its claim that it had acquired an easement of right of way over the lands in question, and that this being so, defendant owed no duty to plaintiff to keep its premises safe. . . . The second theory advanced by appellant company for the support of its claimed easement rests upon a claim of title to the asserted right by adverse possession. We do not think we are here seriously concerned with the question of the respective rights of the owner of the land and the company in the easement in question. This is not an action between the parties to determine such rights. Assuming some

interest in the land to exist in favor of the company or the public, to the unlimited and unrestricted right to have its wire pass over the lands, the question with which we are concerned is the duty of the company to exercise care in the use of the alleged easement.''

In the light of the authority just quoted, the court's ruling in this connection was correct. The authorities relied upon by defendant relate to disputes between public service and *quasi*-public service corporations and landowners, in which cases the existence or extent of an easement is an indispensable issue. In the case at bar the question as to the existence of the easement and the extent of the easement is incidental, and is neither conclusive nor decisive. As in the Anderson case, *supra,* the all-important question was one of negligence and the duty of the defendant to exercise care in the use of the alleged easement.

 The court further instructed the jury as follows: ''And the burden here for anyone alleging that the accident was caused by the sole negligence of the driver, Renne, the burden of proof is upon that person.'' Appellant argues that such instruction placed on defendant the burden of proof with respect to an issue in the nature of an affirmative defense, and in that connection points out that no affirmative defense alleging the negligence of the driver of the automobile was pleaded. During the course of instructions to the jury the records reveals the following to have occurred: ''The Court: At the time of this accident, to wit, August 28, 1932, the California Vehicle Act then in full force and effect provided, among other things, as follows—and as far as this case is concerned, this law which I am about to give you is applicable to the case in so far as it may be applicable, . . . 'In any civil action'—and this is a civil action—'the driver of a vehicle who has operated such vehicle at a speed in excess of the miles per hour set forth in subdivision (b) applicable at the time and place shall not be deemed to have been negligent by reason thereof as a matter of law, but in all such actions the burden shall be upon the opposing party to establish that the operation of such vehicle at such speed constituted negligence.' And the burden here for anyone alleging that the accident was caused by the sole negligence of the driver, Renne, the burden of proof is upon that person. I don't know whether the defendant has directly alleged that

or not. Did you so allege among your different defenses that the accident, if it happened, was caused by the sole negligence of the driver?

"Mr. Cunningham (Atty. for Appellant Edison Company): I believe we did. I will have to check that up. That has been our position in the case."

Elsewhere the jury was properly instructed as to the burden of proof. From an examination of the evidence as well as the instructions given, it cannot be said that the instruction, about which appellant complains, given in the manner above recited, misled the jury and resulted in a miscarriage of justice. Incidentally appellant's counsel appears to have, in effect, acquiesced in the alleged error, which a different reply to the court's inquiry might have prevented.

Finally, with regard to appellant Edison Company's contention that the evidence of negligence does not support the verdict, it should be noted that this question was decided adversely to appellant in the Gerberich case, *supra,* and although the present appeal involves added parties plaintiff, the evidence is substantially the same. If there was no reason then for disturbing the verdict on such grounds, there can be no reason now. The motion for judgment notwithstanding the verdict was therefore properly denied.

■ Referring now to the appeal of Marguerite Olivera, as special administratrix of the estate of Walter E. Olivera, deceased, from the judgment in favor of defendant Edison Company notwithstanding the verdict in favor of plaintiff and appellant, it appears that Marguerita Olivera (Van Klaveren), the minor daughter of Walter E. Olivera, was one of the persons injured in the accident out of which the actions herein arose. Walter E. Olivera incurred liability for medical expenses on account of the injury to his daughter Marguerita. Suit was filed by said Walter E. Olivera, but before the date of trial said Olivera died. Marguerite Olivera, as special administratrix of the estate of Walter E. Olivera, was substituted as plaintiff and a supplemental complaint was filed and the action consolidated for trial with the other actions then pending. The jury returned a verdict in favor of the personal representative of Mr. Olivera's estate and a motion for judgment notwithstanding such verdict was granted, apparently on the sole ground of abatement.

As contended by appellant Marguerite Olivera, ''The determination of this appeal hinges on the question whether the cause of action comes within the operation of the maxim *actio personalis moritur cum persona;* in other words, was the loss which was sustained by Walter E. Olivera, the decedent, a personal injury within the meaning of the maxim? It is appellant's contention that the maxim above quoted refers only to injuries to the person or reputation and does not include consequential damage of the type involved in this appeal.'' In other words, the estate of the original plaintiff became diminished in value by reason of medical expenses and loss of services and hence, it is urged by appellant, the estate is entitled to recoup the loss.

Sections 573 and 574 of the Probate Code provide for actions that may be maintained by executors and administrators as follows:

''Sec. 573. *Extent of power to sue and be sued.* Actions for the recovery of any property, real or personal, or for the possession thereof, or to quiet title thereto, or to determine any adverse claim thereon, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators or intestates, and all actions by the state of California or any political subdivision thereof founded upon any statutory liability of any person for support, maintenance, aid, care or necessaries furnished to him or to his spouse, relatives or kindred, may be maintained against executors and administrators in all cases in which the same might have been maintained against their respective testators or intestates.''

''Sec. 574. *Actions for trespass.* Executors and administrators may maintain an action against any person who has wasted, destroyed, taken, or carried away, or converted to his own use, the property of their testator or intestate, in his lifetime, or committed any trespass on the real property of the decedent in his lifetime; and any person, or the personal representative of any person, may maintain an action against the executor or administrator of any testator or intestate who in his lifetime has wasted, destroyed, taken, or carried away, or converted to his own use, the property of any such person or committed any trespass on the real property of such person.''

That such an action did not survive at common law requires no citation of authority, and the sections above quoted contain no such authority. Obviously the action herein is not founded upon contract, and the daughter of the deceased by no process of reasoning can be included within the contemplation of the statute as a part of the *"property"* referred to therein. The court's order granting defendant's motion for judgment notwithstanding the verdict in favor of plaintiff was therefore correct.

For the foregoing reasons the judgments and order appealed from are affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1938. Shenk, J., and Houser, J., voted for a hearing.