[S. F. No. 16529. In Bank. July 23, 1942.]

ALICE SPECK et al., Respondents, v. PHILIP R. SARVER et al., Appellants.

Francis N. Foley for Appellants.

Norman S. Menifee for Respondents.

CURTIS, J.—Defendants appeal from a judgment in favor of plaintiffs for damages for injuries arising out of an automobile collision.

The two automobiles involved approached from opposite directions on a narrow, winding highway and met in a head-on collision on a curve in the road. There was no white line marking the middle of the highway. A bank extended upward on the east or defendants' side of the road, and there was a steep slope extending downward on the west or plaintiffs' side of the road. The plaintiffs testified that the defendants' automobile was on the wrong side of the road and traveling at an excessive rate of speed immediately preceding the collision, while plaintiffs' automobile was on the proper side of the road and traveling at a slow rate of speed. Plaintiff Matthew Speck, the driver of the car, testified that just prior to the impact he swerved slightly toward the center of the road to avoid going over the bank. The defendant driver also turned in and the automobiles came to rest approximately in the center of the road. Philip Sarver, the driver of the defendants' car, testified that at all times he was driving on the proper side of the road at a moderate speed, while just before the

collision plaintiff Speck was driving on the wrong side of the road. After the jury returned a verdict in favor of plaintiffs, a motion for a new trial was made by the defendants and denied by the trial court.

Upon this appeal it is urged that the evidence is insufficient to support the implied finding of the jury that the plaintiffs were free from negligence. In other words, it is contended that plaintiffs were guilty of contributory negligence as a matter of law. It is also urged that the court erred in giving a certain instruction to the jury, and that there was prejudicial misconduct on the part of plaintiffs' attorney preventing defendants from having a fair trial.

There is no necessity for a detailed discussion of appellants' first contention. From the brief recital of the facts herein and from the other evidence disclosed by the record, it is apparent that the jury was justified in making its implied finding that the plaintiffs were free from contributory negligence. The evidence is conflicting on this issue and the jury's implied finding thereon is conclusive on appeal. (*Taylor* v. *Oakland Scavenger Co.*, 17 Cal. (2d) 594 [110 P. (2d) 1044]; *Flores* v. *Fitzgerald*, 204 Cal. 374 [268 Pac. 369]; *Smith* v. *Rothschild*, 3 Cal. App. (2d) 273 [39 P. (2d) 464]; *Wynne* v. *Wright*, 105 Cal. App. 17 [286 Pac. 1057].)

The instruction complained of is as follows: "In the absence of evidence to the contrary, the law presumes that the plaintiffs did everything that reasonably prudent persons would have done under the circumstances for the protection of their safety. The presumption that plaintiffs were not guilty of contributory negligence is, in itself, a species of evidence which continues with the said plaintiffs throughout the trial of this action and unless and until overcome by evidence to the contrary. This presumption in favor of said plaintiffs must prevail until and unless it is overcome by satisfactory evidence to the contrary."

The rebuttable presumption that a person takes ordinary care of his own concerns is declared in section 1963 (4) of the Code of Civil Procedure. An instruction as to the existence of this presumption may properly be given to the jury in certain situations. (See *Westberg* v. *Willde*, 14 Cal. (2d) 360 [94 P. (2d) 590]; *Ellison* v. *Lang Transportation Co.*, 12 Cal. (2d) 355 [84 P. (2d) 510]; *Downing* v. *Southern Pacific Co.*, 15 Cal. App. (2d) 246 [59 P. (2d) 578].) Such an instruction, however, should not be given where the evidence intro-

duced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time in question. (See cases last cited and also *Mundy* v. *Marshall*, 8 Cal. (2d) 294 [65 P. (2d) 65]; *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 P. (2d) 709]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 Pac. 884].) In the instant case the plaintiffs testified in regard to the events leading up to the collision. Plaintiff Matthew Speck, the driver, explained all of his actions. Under such circumstances there was no room for the presumption in this case. What was said in *Rogers* v. *Interstate Transit Co.*, *supra*, is equally applicable here. It is there stated at page 38: "At the trial of this action plaintiff not only testified as to the circumstances of the collision between the car he was driving and the autostage of the defendant, but he produced witnesses who gave evidence, both direct and on cross-examination, of his acts and conduct just before and at the time of the collision. Whether the plaintiff took ordinary care of his own concerns while operating his car at that particular occasion was a matter of evidence established by the plaintiff and witnesses called by him in support of his claim that he did. In the face of this evidence there was no room for any presumption. If the evidence on his part showed that he was negligent, then it cannot be said that the jury, notwithstanding this evidence, might presume that he was not negligent, or that he took ordinary care of his own concerns, which amounts to the same thing. On the other hand, if this evidence showed that plaintiff was not negligent in the operation of his car at the time of its collision with defendant's stage, then that fact was before the jury, not as the result of any presumption, but in response to testimony of witnesses testifying in the case. In either event, the jury, in determining whether the plaintiff was guilty of negligence, would look to and be governed by the evidence before the court, and not by any presumption." In view of the foregoing, the giving of the instruction complained of was error.

The question still remains whether the instruction was prejudicial under all the circumstances of this case. We are satisfied that it was not. There was considerable testimony on both sides on the question of contributory negligence, and, as previously stated, there was ample evidence to support the jury's implied finding that the plaintiffs were not negligent. The instruction itself was qualified by the phrase "in the absence of evidence to the contrary." Under it the jury was

therefore free to accept the contrary evidence and to return a verdict thereon in favor of the defendants. Contributory negligence was fully and properly defined by the court, and the jury was instructed: "If you find from the evidence that plaintiffs were guilty of contributory negligence as defined in this instruction, however slight such contributory negligence on their part may have been, then you should return your verdict for the defendants, and each of them." The jury was further instructed: "Plaintiffs were at all times called upon to exercise ordinary care for their own safety and, if they failed to do so, and such failure was a proximate cause of injury or damage to them, they cannot recover and your verdict must be against them and in favor of defendants." The jury was also told: "Whether the parties did, or did not, use ordinary care is for you to determine from the facts testified to and, if you conclude from the evidence that plaintiffs did not use ordinary care and that their lack of ordinary care contributed proximately to their injury or damage then your verdict must be against the plaintiffs and in favor of defendants." In consideration of the qualification in the instruction itself and in view of the other instructions quoted above, the defendants did not suffer any prejudice by the giving of the instruction. Under such circumstances the error is not prejudicial and does not warrant a reversal. [California Constitution, article VI, § 4½; *Ellison* v. *Lang Transportation Co., supra; Tuttle* v. *Crawford,* 8 Cal. (2d) 126 [63 P. (2d) 1128]; *Rogers* v. *Interstate Transit Co., supra.*]

Any asserted misconduct on the part of plaintiffs' counsel in implying that defendants' counsel was withholding photographs of the scene of the accident may not be said to have been prejudicial. The trial judge admonished the jury to disregard the statements. (*Keena* v. *United Railroads,* 197 Cal. 148, 163 [239 Pac. 1061]; *House* v. *Pacific Greyhound Lines,* 35 Cal. App. (2d) 336, 342 [95 P. (2d) 465]; *Gerberich* v. *Southern California Edison Co.,* 26 Cal. App. (2d) 471, 476 [79 P. (2d) 783].) Nor did plaintiff Matthew Speck's statement on the witness stand that defendant Philip Sarver had stated he was insured constitute prejudicial misconduct under the facts of this case. Speck's statement was made incidentally during testimony as to a conversation which occurred between him and Sarver in which Sarver tended to admit fault. The statement was not made in response to any question by counsel attempting to inject the fact of defen-

dants' insurance into the case. The proper rule governing the reference to insurance in the instant case is found in *Packard* v. *Moore,* 9 Cal. (2d) 571, 580 [71 P. (2d) 922], wherein this court adopts the following statement from *Hughs* v. *Quackenbush,* 1 Cal. App. (2d) 349 [37 P. (2d) 99]: "While the courts have condemned repeatedly attempts to bring before the jury the fact that insurance exists, their condemnation extends only to cases where there is an 'avowed purpose and successful attempt' to bring the fact before the jury. It does not extend to cases where the information comes in, incidentally, in attempting to prove other facts, or where the record does not show that the particular answer was sought or anticipated." (See, also, *Hatfield* v. *Levy Brothers,* 18 Cal. (2d) 798 [117 P. (2d) 841].)

The judgment is affirmed.

Shenk, J., and Carter, J., concurring.

GIBSON, C. J. — I concur for the reason that the rules as to the nature of rebuttable presumptions upon which the foregoing opinion is based have been fixed by many decisions of this court, and any modification of such rules should be effected by the Legislature, and not by overruling at this time the cases establishing them.

TRAYNOR, J.—I dissent.

After properly instructing the jury that the defendants had the burden of proving the plaintiffs guilty of contributory negligence, the court proceeded to instruct them that there was a presumption against the existence of facts it was defendant's burden to prove, and that this presumption could be weighed as evidence of their non-existence. This instruction was prejudicial error, for it enabled the jury to tilt the scales against the defendant by arbitrarily attributing more weight to the presumption than to the evidence against it, no matter how extensive or persuasive. Evidence is marshalled to no avail against a presumption under such an instruction, for it is impossible to prove the non-existence of the fact presumed when the jury is free to regard the presumption as superior to any proof against it. So long as the presumption is regarded as superior it is inviolate, and the most exhaustive proof cannot disturb its invulnerability. The rule that rebuttable presumptions may be weighed as evi-

dence is so arbitrary, and its consequences so mischievous that it becomes imperative to set forth to what lengths it has departed from the function and purposes of such presumptions.

When one of the parties to a lawsuit has the burden of proof upon a particular issue, he must establish the existence of the necessary facts by preponderance of the evidence, persuade the jury that it is more probable that these facts exist than that they do not. (Code Civ. Proc. §§ 2061 (5), 1826, 1981; *Murphy* v. *Waterhouse,* 113 Cal. 467 [45 Pac. 866, 54 Am. St. Rep. 365]; *Ergo* v. *Merced Falls etc. Co.,* 161 Cal. 334 [119 Pac. 101, 41 L. R. A. (N. S.) 79]; *Treadwell* v. *Nickel,* 194 Cal. 243 [228 Pac. 25].) In a civil suit the burden of proof is the maximum requirement that can be placed upon a party who undertakes to prove the existence of facts. In some instances the courts and legislatures have found it necessary to lend assistance to the party bearing the burden of proof. In certain types of cases they have set up rules, designated as rebuttable presumptions, to the effect that when such a party establishes the existence of certain primary facts, the additional facts necessary to prove his case will be presumed to exist, unless the opposing party offers proof that they do not exist, in which case the jury must determine the existence or non-existence of these facts from the evidence. Rebuttable presumptions do not shift the ultimate burden of proof, but impose upon the party without the burden of proof the burden of going forward with the evidence after his opponent has introduced evidence sufficient to establish the existence of certain primary facts. (Wigmore, Evidence [3d ed.] §§ 2487, 2489, 2491; Thayer, A Preliminary Treatise on Evidence, 314-315, 317. See *Scott* v. *Wood,* 81 Cal. 398 [22 Pac. 871]; *San Francisco* v. *Tillman Estate Co.,* 205 Cal. 651 [272 Pac. 585].) They are employed for various reasons (See Morgan, · *Instructing the Jury on Presumptions and Burden of Proof,* 47 Harv. L. Rev. 59, 77; American Law Institute, Code of Evidence Tentative Draft No. 2, (1941) p. 211): (1) To require the litigant with greater access to the facts in dispute to make them known. Thus, if a plaintiff bailor, with the burden of proof, establishes that he delivered property in good condition to a defendant bailee and received it back in a damaged condition, a presumption arises that it was damaged because of the bailee's negligence, and the latter must then come forward with proof that his negligence did not cause the in-

jury. (*Alpine Forwarding Co.* v. *Pennsylvania R. R. Co.,* 60 F. (2d) 734; *Rustad* v. *Great Northern R. R. Co.,* 122 Minn. 453 [142 N. W. 727].) (2) To assist in solving a dilemma when there is little or no evidence available to prove or disprove a particular fact. Thus, if a person has been continuously absent and unheard from for seven years, he will be presumed dead in the absence of evidence to the contrary, so as to enable a court to distribute his estate. (Code Civ. Proc. § 1963(26).) (3) To facilitate a finding in accord with the balance of probability. Thus, it is presumed in the absence of evidence to the contrary that a person found to have met his death by violence did not commit suicide. (Code Civ. Proc. § 1963(1); see *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1 [210 Pac. 269]; 95 A. L. R. 887.) (4) To encourage a finding consonant with judicial judgment as to sound social policy. Thus, it is usually presumed in the absence of evidence to the contrary that a marriage has been lawfully contracted. (Code Civ. Proc. § 1963(30).)

Rebuttable presumptions are thus no more than procedural devices for the fair apportionment between the litigants of the burden of going forward with the evidence. If the party against whom a presumption operates fails to come forward with substantial evidence tending to prove the non-existence of the facts presumed, his opponent with the burden of proof is entitled to an instruction that the facts exist. If he does come forward with such evidence, the jury must decide upon the existence of the facts. (Wigmore, *supra,* §§ 2487, 2489, 2491; Thayer, *supra,* 314-315, 317; 1 Jones, Evidence [2d ed.] 54.)

In the majority of jurisdictions the presumption disappears from the case when evidence is introduced contrary to the facts presumed, and the issue goes to the jury with the primary burden of proving the facts still upon the party who originally assumed it. (See cases cited in 22 C. J. 156, note 34; Wigmore, *supra,* § 2491; Jones, *supra,* § 32.) Some courts, however, hold that a presumption continues to operate until the party against whom it applies introduces evidence that persuades the jury that the non-existence of the facts presumed is as probable as their existence when considered with evidence as to their existence introduced by the litigant in whose favor the presumption operates. (*O'Dea* v. *Amodeo,* 118 Conn. 58 [170 Atl. 486]; *Beggs* v. *Metropolitan Life Ins. Co.,* 219 Iowa 24 [257 N. W. 445, 95 A. L. R. 863]; *Clark* v.

*Diefendorf,* 109 Conn. 507 [147 Atl. 33] ; *Gillett* v. *Michigan United Traction Co.,* 205 Mich. 410 [171 N. W. 536] ; *Klunk* v. *Hocking Valley Ry. Co.,* 74 Ohio St. 125 [77 N. E. 752]. See Morgan, *Instructing the Jury Upon Presumptions and Burden of Proof,* 47 Harv. L. Rev. 59 ; McBaine, *Presumptions: Are They Evidence?* 26 Cal. L. Rev. 519, 533.) If the opposing party introduces no substantial evidence to combat the presumption, the court will instruct the jury that the facts exist as a matter of law. If he introduces such evidence the case goes to the jury with instructions that if it disbelieves the evidence of the opposing party, the presumption stands and the verdict should be in favor of the party with the burden of proof. If, however, the jury believes it as probable that the facts do not exist as that they do, it should find in favor of the party against whom the presumption operates.

This view of the effect of presumptions is the sounder one. Under the majority rule the purpose of a presumption can be defeated by perjured testimony that is not believed by the trier of the facts; the mere introduction of evidence, however unreliable, suffices to dispel the presumption. Under the minority rule the presumption remains until sufficient contrary evidence is introduced that the trier of the facts is willing to believe.

In either case, it is clear that a rebuttable presumption is only a procedural device to aid the party with the burden of proof. It would be meaningless if applied against him because he already has the greater burden of introducing sufficient evidence to prove the existence of the facts by the preponderance of the probabilities. Such presumptions cannot constitute actual evidence, as would the observations of witnesses or physical objects or occurrences. They are merely rules establishing the existence of a fact as a matter of law in the absence of credible evidence to the contrary, and apportioning the burden of going forward with the introduction of such evidence. The overwhelming majority of decisions in other jurisdictions agree that rebuttable presumptions cannot be evidence, however they may disagree as to when they disappear from the case. (See cases cited in 95 A. L. R. 880.)

Certain cases in California, however, have held that the court should instruct the jury to weigh presumptions as actual evidence along with the testimony in determining the existence of facts, and that presumptions may be directed against the party with the burden of proof. (*Smellie* v. *South-*

*ern Pacific Co. et al.*, 212 Cal. 540 [299 Pac. 529]; see cases cited in 18 Cal. L. Rev. 418; 20 Cal. L. Rev. 189. See 95 A. L. R. 883.) It is a mental impossibility to weigh a presumption as evidence. Juries can decide upon the probable existence of a fact only by a consideration of actual probative evidence bearing thereon. A rule of law that the fact will be presumed to exist in the absence of evidence cannot assist them in determining from an examination of evidence whether or not the fact exists. It is impossible to weigh a rule of law on the one hand against physical objects and personal observations on the other to determine which would more probably establish the existence or non-existence of a fact.

The burden of proof may well be impossible for a litigant to sustain if a presumption is applied as evidence against him. He must, under such a rule, establish the existence of certain facts by a preponderance of the probabilities, while a presumption persists that these facts do not exist and the jury is free to weigh this presumption as evidence upon which to find that the facts do not exist despite physical evidence that they do.

Even when a presumption treated as evidence is applied in favor of the party with the burden of proof, the results are incongruous. The other litigant is in effect informed by the court that his opponent has the burden of proving the facts by the preponderance of the probabilities but there is a presumption that the facts thus to be proved are true, and the jury is free to find on the basis of this presumption that the facts do exist despite physical evidence that they do not. The presumption should serve only to force the party without the burden of proof to come forward with evidence contrary to the facts presumed, not somehow to outweigh the very evidence that he introduces to prove his point.

The California cases have treated presumptions as evidence primarily on the ground that certain code sections compel this result. (See *McBaine, supra,* 26 Cal. L. Rev. 519, 557-561.) Code of Civil Procedure section 1961 states: "A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the jury are bound to find according to the presumption." Section 1963 lists 40 rebuttable presumptions that "may be controverted by other evidence." These sections embody the general rule that a rebuttable presumption establishes the existence of a fact unless credible evidence contrary

to the fact presumed is presented. They in no way establish that the presumption itself is evidence. The references to "other evidence" serves to distinguish evidence controverting the presumption from evidence of the primary facts that give rise to the presumption and from evidence that may be introduced in support of the fact presumed.

Section 2061 of the Code of Civil Procedure provides: "The jury, subject to the control of the court, in the cases specified in this code, are the judges of the effect or value of evidence addressed to them, except when it is declared to be conclusive. They are, however, to be instructed by the court on all proper occasions: . . . (2) That they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds." Certainly there is no statement here that a presumption must be treated as evidence. This section does no more than establish the rule that gives to presumptions greater vitality than they would have if they disappeared upon the introduction of any evidence contrary to the facts presumed. It provides in effect that a rebuttable presumption remains in the case and controls the determination of a jury that disbelieves the evidence contrary to the fact presumed.

Finally, section 1957 provides: "Indirect evidence is of two kinds: 1. Inferences, and 2. Presumptions." This section is a broad classification of indirect evidence and is not concerned with the legal effect of a presumption. At the time of its adoption in 1872, legal writers used the terms presumptions and inferences interchangeably to apply to a logical deduction that could be drawn from a set of facts. (1 Greenleaf, Evidence [Redfield ed.] 21; 1 Phillipps, Evidence, [3d ed.] 436-437; 1 Starkie, Evidence, [3d ed.] 404. See Thayer, *supra*, 546-548; Wigmore, *supra*, § 2491; McBaine, *supra*, 26 Cal. L. Rev. 519, 521-527.) That this meaning of presumption was intended by the Legislature when it enacted section 1957 in 1872 is indicated by section 1832, enacted at the same time, which states: "Indirect evidence is that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference or presumption of its existence. For example: a witness proves an admission of the party to the fact in dispute. This proves a fact, from which the fact

in dispute is inferred." This section defines indirect evidence as an inference, but uses the terms "inference" and "presumption" as synonyms. Section 1957 does not therefore establish rebuttable legal presumptions as evidence in view of other sections of the Code of Civil Procedure which specifically set forth the effect of legal rebuttable presumptions. (Code Civ. Proc. §§ 1959, 1961, 1963.) A construction of these sections to the effect that rebuttable presumptions may be weighed as evidence would in all likelihood render them unconstitutional. (*Manley* v. *State of Georgia,* 279 U. S. 1 [49 S. Ct. 215, 73 L. Ed. 575] ; *Western & Atlantic R. R. Co.* v. *Henderson,* 279 U. S. 639 [49 S. Ct. 445, 73 L. Ed. 884] ; *Morrison* v. *California,* 291 U. S. 82 [54 S. Ct. 281, 78 L. Ed. 664] ; *New York Life Insur. Co.* v. *Gamer,* 303 U. S. 161 [58 S. Ct. 500, 82 L. Ed. 726, 114 A. L. R. 1218]. See, also, *People* v. *Murguia,* 6 Cal. (2d) 190 [57 P. (2d) 115]. See McBaine, *supra,* 26 Cal. L. Rev. 519, 551 note 66 and authorities there cited.)

The rebuttable presumptions enumerated in the codes as well as those established by the courts do not require any set procedural formula to give them effect. If the litigant against whom a presumption operates has the burden of proof, an instruction by the court to the jury that such litigant must establish the facts by a preponderance of the probabilities imposes upon the litigant an even greater burden than that required by the presumption. No mention of the presumption is necessary. If the presumption operates in favor of the party with the burden of proof the court should instruct the jury that upon the setting up of certain preliminary facts the presumption applies in favor of the party with the burden of proof who is entitled to the verdict unless the other litigant comes forward with credible evidence contrary to the facts presumed. Once such evidence is produced and believed, the jury should weigh it against any evidence introduced in support of the facts presumed and decide in favor of the party against whom the presumption operates if it believes that the non-existence of the facts is as probable as their existence. Nothing need be said about weighing the presumption as evidence. When the evidence against the presumption is clear, positive, uncontradicted and of such a nature that it cannot rationally be disbelieved the court should instruct the jury, as it would regarding inferences, that the non-existence of the fact presumed has been established as a matter of law.

(*Blank* v. *Coffin*, 20 Cal. (2d) 457 [126 P. (2d) 868]; *Engstrom* v. *Auburn Auto Sales Corp.*, 11 Cal. (2d) 64 [77 P. (2d) 1059].)

There is no agreement in the California cases on the proposition that rebuttable presumptions should be weighed as evidence. The Smellie case, *supra*, was preceded by a line of decisions holding that presumptions were not evidence. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, 375; *Nieto* v. *Carpenter*, 21 Cal. 455, 489; *Larrabee* v. *Western Pacific Ry. Co.*, 173 Cal. 743, 747 [161 Pac. 750].) The courts have consistently held that the presumption of innocence from crime cannot be used as evidence in a criminal proceeding. (*People* v. *Moran*, 144 Cal. 48 [77 Pac. 777].) The Smellie case held that Code of Civil Procedure section 1963(4), which presumes "that a person takes ordinary care of his own concerns" should be weighed by the jury as evidence of absence of contributory negligence on the part of plaintiff. Later cases have limited the application of this presumption to situations where there are no eye witnesses to an accident, holding that "where it is possible to call eye witnesses to testify positively to the facts and circumstances surrounding the accident, the presumption is not applicable." (*Downing* v. *Southern Pacific Co.*, 15 Cal. App. (2d) 246 [59 P. (2d) 578]; *Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 Pac. 884].) Still other cases have held that this presumption and similar ones in favor of one party are dispelled when the details of the accident are disclosed by the testimony of that party or his witnesses. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]; *Mundy* v. *Marshall*, 8 Cal. (2d) 294 [65 P. (2d) 65]; *Kelly* v. *Fretz*, 19 Cal. App. (2d) 356 [65 P. (2d) 914]; *Paulsen* v. *McDuffie*, 4 Cal. (2d) 111 [47 P. (2d) 709].) Certain decisions have indicated that the person whose conduct is in question must be dead before the presumption can operate in this manner. (*Westberg* v. *Willde*, 14 Cal. (2d) 360 [94 P. (2d) 590].) In effect these cases hold that the presumption drops out of the case because there is evidence bringing into question the fact presumed. There is in them an inarticulated admission that the character of evidence is foreign to presumptions, and that however often it has artificially been grafted on to them it can be shed with equal facility. Confusion is rife, however, because presumptions have not been clearly divested of their artificial character. They appear now as themselves and again in the guise of evidence.

The court has sometimes seen through the disguise when the injustices it would have concealed revealed themselves immediately and boldly. As often as not, however, the court has failed to perceive the injustice through the disguise. It is time to have done with the confusion and inconsistency engendered by its vacillation between the acceptance and the repudiation of presumptions as evidence.

It is pure ritualism that a precedent should gather as much respect from a long life of inconsistency as it would from a long life of certainty, and earn the right to survive merely because it has survived so long. One looks to precedent for certainty, the substance of its vitality. If instead it offers only confusion it loses its right to endure indefinitely. The confusion in the California cases as to the function of rebuttable presumptions can be eliminated only by repudiating the erroneous view that such presumptions may be weighed as evidence. *Smellie* v. *Southern Pacific Co., supra,* and the cases following it should be overruled.

In the field of evidence and procedure everything is gained and little lost by overruling an irrational precedent. Nothing is taken away, as it might be in the substantive law of property and contracts, upon which one is entitled to rely. Certainly the parties in an automobile accident cannot reasonably contend that they operated their vehicles in reliance on the rule in the Smellie case. That rule was a judge-made rule and should be laid at rest where it originated. It would be most inappropriate to shift the responsibility for its demise to the Legislature, for it involves not questions of policy, but technical questions of procedure that are peculiarly within the province of the courts. If the court can view with equanimity a legislative repudiation of the rule, its own adherence to the rule springs no longer from a conviction of its rightness, but from a willingness to endure its wrongness until others less suited to the task take the initiative in its repudiation.

Edmonds, J., concurred.

Appellants' petition for a rehearing was denied August 20, 1942. Edmonds, J., and Traynor, J., voted for a rehearing.