## Thomas Aston, Appellee, v. Jacob Aston, Appellant.

1. LIMITATION OF ACTIONS, § 94*—*when creditor cannot apply payment to revive barred note.* Where a person owes a creditor on several notes, some of which are barred by the statute of limitations, the creditor cannot apply a payment to a barred note so as to revive it except by the direction of the debtor.

2. LIMITATION OF ACTIONS, § 79*—*what not a new promise to pay note.* An expression in a letter from the maker of certain notes to the holder, "With regard to the notes  *  *  *  I will come over as soon as I can and we will fix it up," *held* not to constitute a new promise in writing to pay the notes so as to toll the statute of limitations.

Appeal from the Circuit Court of Logan county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

term, 1913.   Reversed with finding of facts.   Opinion filed December 27, 1913.   Rehearing denied April 9, 1914.

McCORMICK & MURPHY, for appellant.

BEACH & TRAPP and BEVAN & BEVAN, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is a suit begun in April, 1913, in the Circuit Court of Logan county by Thomas Aston upon eight promissory notes made by Jacob Aston, a brother of plaintiff. The declaration consists of special counts declaring on each note and the common counts. The defendant pleaded the general issue and the statute of limitations. To the statute of limitations the plaintiff filed replications of payments averred to have been made on each note within ten years and a new promise in writing to pay each of said notes made, within ten years prior to the beginning of the suit.

The oldest note sued on is dated September 1, 1887, and is for $380, due one day after date with eight per cent. interest. There are indorsed on it a credit of $50 April 1, 1909, and another of $10.69 March 16, 1912. The other notes are for different sums varying from $150 to $400. The last one is dated in April, 1899, and is for $360.75, due in one year, and has credits indorsed on it Feb. 11, 1903, $125, and March 16, 1912, $5. Each of the other notes bears an indorsement of a credit of $5, of date March 12, 1912.

The case was tried before the court without a jury. The court rendered judgment for plaintiff for $1,112.80, and for costs against the defendant on the note dated September 1, 1887. The defendant appeals.

The notes upon which the suit is brought were all due more than ten years before the beginning of the suit. The statute of limitations is a good defense to each note, unless the plaintiff has proved one of his

replications to some of the notes by a preponderance of the evidence, in which event he would be entitled to a judgment on the notes to which he has proved the averments of his replication.

The evidence is clear that on April 1, 1909, the defendant paid $50 to the plaintiff. The evidence of the plaintiff and the defendant is conflicting as to where and how this payment was made, and whether or not the defendant directed on which note this payment should be applied or left its application to the plaintiff. The plaintiff testified that he received the payment by check or draft in a letter and that no application was made of the money by the defendant and that he applied it as a payment on the note of September 1, 1887, and that by this payment the bar of the statute was removed.

The defendant testified that he made the payment in cash and that he, the defendant, indorsed the payment on a note for $57.15, dated December 5, 1885. The plaintiff denied that he ever had any such note executed by the defendant.

The evidence of the defendant is corroborated by Cyrus J. McCormick, assistant cashier of the Farmers Bank of Emden, who testified that in September, 1910, the bank at Emden had for collection for the plaintiff against the defendant two notes; that one was a note dated December 5, 1885, due December 7, 1885, made by Jacob Aston to Thomas Aston for $57.15, on which there was indorsed $50, paid April 1, 1909, the collection being bank No. 5,814. The collection register of the bank was produced and showed entries concerning such a note for collection. He also testified that he presented this note to Jacob Aston for collection and that defendant told him to return it to his brother Tom. The defendant also introduced in evidence the following letter written by Thomas Aston in September, 1910, with which he sent two notes to the bank at Emden for collection: "Atlanta, September, 1910. I sent these

notes for you to colect, entrest on small note $54. dolars 30 cts. balance of note 7 dol. 15 cets. $50 dolars pade april first 1909, entrest on big not $112 dol. 75 cts. one hundred $25 dolars pade on big note febery first 1909. balance of big note $235 dolars 75 cts. keep these nots at bank tel pade i put entrest don at 4 per cent. you can count the entrest see if it is rite. Thomas Aston. to W. W. McCormick.'' Memorandum stamped thereon, ''Returned unpaid November 10, 1910, No. 5,814-5,815.''

The clear preponderance of the evidence shows that the payment of $50 made April 1, 1909, was credited on a note dated December 5, 1885, not sued on in this case. The plaintiff cannot by changing the credit for this sum from the note it was originally credited on to the note of September 1, 1887, thereby revive the latter note.

The claim of plaintiff that he had the right to and applied the payment of the $50 note of September 1, 1887, and that said note was thereby revived, is also answered by the fact that at the time that payment was made plaintiff held a note for $360.75, dated April 1, 1899, due in one year, against which the statute had not run. The statute had run against all the other notes unless some act of the defendant had tolled the running of the statute. There is no direct authority in this State on the question whether an undirected application of a payment made by a debtor, who owes several notes to the same creditor, some of which are and one of which is not barred by the statute of limitations, will raise the bar of the statute when applied by the creditor to one of the notes against which the statute has run so as to revive the cause of action against the unpaid portion of the barred note. The English doctrine is that such application will not take the balance of the debt out of the statute. *Mills v. Fowkes,* 5 Bing. N. C. 455. Massachusetts, Maine and Colorado follow the English doctrine. *Pond v. Will-*

*iams,* 1 Gray 630; *Blake v. Sawyer,* 83 Me. 129; *McBride v. Noble,* 40 Colo. 372. Vermont and Missouri hold the other way. *Ayer v. Hawkins,* 19 Vt. 26; *Shannon v. Austin,* 67 Mo. 485. The reasoning of the Supreme Court of Illinois in *Lowery v. Gear,* 32 Ill. 383, would seem to indicate that that court will follow the Massachusetts rule. The Court in the *Lowery* case said that "it is a general rule, no doubt, that where a debtor makes a payment without designating to which of several claims it shall apply, the creditor may apply it to which he pleases; but this could not authorize Brown to so apply it as to bind Gear by an implied new promise, without the actual intention of Gear to make such a promise. This was a matter in which Gear must have had an affirmative intention, before he could be bound." * * * "If he had no thought or intention one way or the other, even then he could not be held to have made a new promise, for to do that he must have had an affirmative intention." The payment by a debtor owing an account of a sum not more than sufficient to cover recent items is not sufficient to remove the bar of the statute from items of older date without evidence of the debtor's intention to apply such payments to that purpose. *Miller v. Cinnamon,* 168 Ill. 447. The rule deducible from the reasoning in this State and the weight of the authorities would appear to be that the creditor may apply it to any valid and binding indebtedness but that he cannot apply it to revive a debt already outlawed except by the direction of the debtor.

The plaintiff has assigned cross-errors and insists that the court erred in not rendering judgment in favor of plaintiff on all the notes. He contends that other payments were made by the defendant on all the notes within ten years, and that the defendant within ten years prior to the beginning of the suit made a promise in writing to pay the notes.

The credits of date March 16, 1912, were indorsed by R. F. Quisenberry, a banker at Atlanta, at the re-

quest of plaintiff. The evidence shows that the defendant, who was in the grain and coal business at Emden, on March 14, 1912, paid taxes amounting to $45.69 on eighty acres of land in Logan county belonging to the plaintiff, and on March 15th forwarded the receipt to plaintiff with a letter, simply stating "I paid your taxes and send you your receipt." The plaintiff the next day had Quiesenberry indorse $10.69 on the note dated September 1, 1887, and $5 on each of the other seven notes. There is no evidence whatever that the defendant intended the payment of taxes to be applied on any indebtedness of his to the plaintiff, and the defendant testified that his brother's tenant hauled and delivered grain to him off his brother's farm: "His renter hauled it in and told me to pay his taxes and keep it out of the grain hauled in. I kept the amount paid for taxes out of grain and settled with plaintiff for balance." There is no evidence whatever showing that the defendant intended this payment of taxes to be applied on any indebtedness of his to the plaintiff, and the evidence does show that it was not so intended.

The contention of plaintiff that the defendant had within ten years promised in writing to pay the notes is based upon the following letters written by the defendant.

"Emden, Ill., Sept. 9, 1910.

Atlanta, Ills.

Thomas Aston

Well Tom, in regard to the notes you sent over to colect, I will come over as soon as I can and we will fix it up some way, if I can't come through the week will come over some Sunday.

From Brother,
J. R. Aston."

"Emden, Ill., Nov. 29, 1911.

Thom Aston,

Atlanta.

Dear Sir:—Thom I will be over before long to see

you about the notes. Have them at your house. I may come Sunday; if the notes are at the bank you get them so we can look them over.

Your brother, J. R. Aston."

The only expression in the letters which could by any possibility be construed into a promise to pay the notes is the expression in the first letter—"Well Tom, in regard to the notes you sent over to colect, I will come over as soon as I can and we will fix it up some way." This expression either by itself or in connection with the other parts of the letter does not show either an acknowledgment of the debt or an unqualified willingness and intention to pay it. It amounts to a statement that their matters would be explained when they met, and as was said in *Wachter v. Albee,* 80 Ill. 47, and in *Ennis v. Pullman Palace Car Co.,* 165 Ill. 161, the language used, "we will fix it up some way," cannot be held to be a promise to pay the debt.

The evidence was not sufficient to authorize any recovery in favor of plaintiff. The judgment is reversed with a finding of facts that the note was barred by the statute and there was neither proof of payment on the note upon which judgment was entered nor a new promise in writing to pay the note.

The clerk will enter the finding of facts in the judgment of this court.

*Reversed with finding of facts.*