RYCE L. CLARK ET ALS. *vs.* ALLEN ROSS DIEFENDORF, EXECUTOR.

Third Judicial District, New Haven, June Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

508

Argued June 6th—decided July 10th, 1929.

*George E. Beers* and *William L. Beers,* for the appellant (the claimant).

*Charles A. Watrous* and *Fleming James, Jr.,* for the appellee (the executor).

MALTBIE, J. The appellant is a physician. Annie K. Joslin died in New Haven April 12th, 1927, leaving a will in which she named him as executor. Thereafter he presented to himself as executor a bill amounting to $3080.15 for professional services rendered the decedent beginning October 11th, 1908, and continuing until her death. This bill was divided into three sections; the first included visits to him at his office from the time he began his charges until the end of the year 1913, for which he charged $5 each; from that time almost up to her death he charged at the rate of $250 a year; during her last illness he rendered services and incurred expenses amounting to $172.15. Acting in pursuance of the provisions of Chapter 124 of the Public Acts of 1921, two legatees moved in the Court of Probate for the appointment of commissioners to hear and determine the claim, and these commissioners made a report in which they allowed it to the amount of $1622.10. Thereupon the plaintiffs appealed to the Superior Court, where the matter was tried to a jury and a verdict rendered for the appellant to recover $190.22.

The appeal contains many assignments of error based upon the charge of the trial court or its failure to charge in certain respects. Many of these have to do with the instructions of the court as to the elements which it was necessary for the appellant to prove in order to establish a valid claim. Although he did claim that on one of the early calls made upon him by the decedent he had told her that his charge would be

$5 a visit, he largely based his right to recover upon an implied contract upon her part arising out of the rendition of services to her at her request. Such an implied contract would arise if the appellant rendered services under an expectation that they were to be paid for, and if the decedent either intended to pay for them or they were rendered under such circumstances that she knew or as a reasonable person should have known that the appellant did expect payment. *Weinhouse* v. *Cronin*, 68 Conn. 250, 253, 36 Atl. 45; *Gillette's Appeal*, 82 Conn. 500, 502, 74 Atl. 762; *Chesebro* v. *Lockwood*, 88 Conn. 219, 224, 91 Atl. 188; 2 Elliott on Contracts, § 1365; 3 Page on Contracts, § 1444. Ordinarily where one requests another to furnish articles or perform services in the usual course of the latter's business, a sufficient basis exists to render the former liable to the latter for their reasonable value. The basis of that liability is an inference that the person rendering the services expected to be paid for them and the other accepted them intending to pay for them. *Ford Co.* v. *Dudley*, 104 Conn. 519, 528, 133 Atl. 746. No doubt this inference may be regarded as a presumption of fact, and it is not rarely so called. *Cotter* v. *Cotter*, 82 Conn. 331, 332, 73 Atl. 903. This presumption has its origin in common experience and it attaches to the bare fact of the request for the rendition of services in the usual course of one's business, an implication as regards both parties of an expectation that payment is to be made for them; but the presumption is not itself evidence and operates merely to obviate the necessity of producing evidence in the particular situation before the court. *Vincent* v. *Mutual Reserve Fund Life Asso.*, 77 Conn. 281, 288, 58 Atl. 963; *Water Commissioners* v. *Robbins*, 82 Conn. 623, 640, 74 Atl. 938; *State* v. *Gargano*, 99 Conn. 103, 108, 121 Atl. 657. As soon as facts are proven sufficient to

raise an issue for the jury as to the actual existence of the elements necessary to establish an implied contract, the presumption loses all significance, though the fact of the request for the services and their rendition in the usual course of business remain in the case, to be considered with all the other relevant evidence in arriving at the ultimate conclusion. When this stage of the case is reached the plaintiff must then establish upon all the evidence the implied contract upon which he relies and if facts which would afford a reasonable basis for a conclusion that the necessary elements were not present are admitted or undisputed no good purpose is served by charging a jury with reference to the presumption... *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 644, 120 Atl. 300. Of course, if such facts are themselves in issue, a charge would be necessary that if the jury finds them not to exist, the contract would be implied from the bare fact of the rendition of services by the plaintiff in the usual course of his business at the request of the defendant. *Knapp* v. *Tidewater Coal Co.,* 85 Conn. 147, 156, 81 Atl. 1063. Even in such a case, reference to the presumption as such would tend to confuse rather than aid a jury and a statement couched in some such language as that we have used would be preferable. *Firszt* v. *Capitol Park Realty Co., supra.*

In the instant case it was undisputed that the appellant occupied a relationship to the decedent going beyond that of physician and patient; that he advised her in regard to her financial affairs, the testamentary disposition of her property, and the like; that she made him executor of her will and gave him in it a substantial legacy "as a matter of appreciation for his many kindnesses," this legacy not to include proper allowances to him as executor; that she looked upon him as a good friend; that during the period of more than

eighteen years covered by his claim he never rendered her a bill for services; and that it was her habit to pay all her bills promptly. These facts in themselves, aside from other evidence disputed or reasonably disputable, are sufficient to raise issues as to the appellant's intent to charge and the decedent's expectation to pay for the services or her acceptance of them under such circumstances that she is chargeable with knowledge of his expectation of payment, if it were found to exist. The case was one therefore for submission to the jury to find whether the appellant had established the elements necessary to a recovery.

The trial court stated to the jury that ordinarily the law will imply a promise to pay for valuable services rendered to another upon the latter's request and thereby it might be regarded as having given, though informally, the appellant the benefit of such inference as might arise from those conceded facts. But the further charge of the court cannot be justified. When it first stated the rule of law it said that the implication arising from the request for services made by the decedent to the appellant would not arise unless it appeared that they were rendered under such circumstances as authorized the appellant to entertain a reasonable expectation that payment would be made and as fairly to justify the inference that the decedent "intended or ought to have intended" to make payment. Its use of the words "ought to have intended" can hardly be regarded as a proper equivalent of the correct test to apply, that the circumstances were such as to apprise the decedent as a reasonable person that the appellant expected payment. But the most serious difficulty arises out of the fact that thereafter in the charge this test is entirely disregarded and the question, as regards the decedent, was made to turn upon the finding of an intent upon her part to

pay for them. Thus the trial court said that this part of the case rested "upon the intention of the parties. That is, upon his part, that the services were rendered with the expectation that they would be paid for, and upon the part of the decedent . . . that they should be compensated for to the extent of the benefits con- ferred and received, and that they were not a gratuity." Again it said: "The decisive factor is the finding of the intent of the parties, that they fairly expected or intended that such services should be paid for, or that they expected or intended them to be wholly gratui- tous; or, in other words, was it their mutual under- standing that they were to be paid for"; the question was one of fact, was there "such a mutual understand- ing . . . that whatever services you find the appellee rendered . . . were rendered upon the expectation or intent of the parties that they should be paid for. . . . If you do not so find, then your verdict should be for the estate." Again it charged the jury that if they found that the appellant rendered the services "at her request with the expectation of being paid for, and with an expectation on the part of the testatrix to pay for the same," they then must determine their reason- able worth. If the jury found in accordance with the facts claimed to have been proven by the appellant a conclusion that he expected payment and that while the decedent had no actual intention of paying for the services, the circumstances were such as to apprise her as a reasonable woman that the appellant expected compensation would have been one the jury might reasonably reach, but this situation the trial court in the passage we have quoted and elsewhere in the charge in effect eliminated from the consideration of the jury.

We must therefore conclude that there was error in the charge of the court in this respect and this makes

desirable a reference to two other main claims of error advanced by the appellant. The trial court charged the jury that claims of the character of the one before them should be carefully scrutinized and scanned and found established only upon clear and satisfactory proof. The appellant contends that this rule applies only where claim is made for services rendered by a relative of the decedent. Such a relationship no doubt does add a justification for it, because ordinarily in the case of services rendered by one near relative to another, neither party contemplates that compensation will be made. *Cotter* v. *Cotter*, 82 Conn. 331, 332, 73 Atl. 903. But the application of the rule is not confined to such situations. Its reason lies in the fact that the living claimant occupies a position of great advantage by reason of the death of the other party to the transaction and it is necessary to provide a check against possible imposition and fraud. Particularly is this true where the representative of the estate is himself the claimant and where a claim which might have been presented in the lifetime of the deceased has been permitted to lie dormant until death has intervened. *Matter of Marcellus*, 165 N. Y. 70, 58 N. E. 796; *Mathiot's Estate*, 243 Pa. St. 375, 378, 90 Atl. 139; *Weed* v. *Clark*, 118 Me. 466, 469, 109 Atl. 8; 1 Moore on Facts, § 46; 24 Corpus Juris, 404-406. We have recognized the applicability of the rule in a case where the claimant was not related to the decedent. *Bartlett* v. *Raidart*, 107 Conn. 691, 696, 142 Atl. 398.

The decedent made two payments of $10 each to the appellant within six years of her death, one on April 22d, 1921, and the other on October 21st, 1922. The appellant claimed that these payments were sufficient to remove the bar of the statute of limitations with reference to the whole claim of indebtedness. The basis of the doctrine by which part payment will take

a case out of the statute of limitations is that, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. It therefore follows that, to have this effect, the trier must find that it was made and accepted as payment of part of the particular indebtedness in suit and under such circumstances that it recognizes the whole of the debt as subsisting, so that the law can imply from it a promise to pay the balance. *Boughton* v. *Boughton,* 77 Conn. 7, 11, 58 Atl. 226; *Radigan* v. *Hughes,* 84 Conn. 137, 141, 79 Atl. 50. If such payments are made in satisfaction of certain items, though these are a part of a continuous series of charges, or if they are accompanied by declarations repudiating any further indebtedness, they could not be regarded as sufficient to remove the bar of the statute. *Boughton* v. *Boughton, supra; Hale* v. *Morse,* 49 Conn. 481. In the instant case the vital question was, did the decedent, in making the payments, thereby recognize the whole series of charges by the appellant as a subsisting indebtedness and this the trial court, as it should have done, left to the jury to decide in view of all the circumstances. The trial court went on to charge the jury, following arguments made by counsel, as to various principles involved in the doctrine of the application of payments. It is not claimed that the decedent designated any particular indebtedness upon which the payments were to be applied. Until 1919 the appellant made his charges upon the basis of $5 a visit, but in his claim he stated that thereafter, until the decedent's last illness, he charged $250 a year, not keeping account of the separate visits. Though, no doubt, he might use a method of yearly charges in fixing the reasonable value of his services, he could not convert the liability of the decedent from one arising upon each visit into one for a yearly charge except by agreement with her

and no evidence was offered of any such agreement. His account can only be regarded as one for a series of charges for individual visits, each giving rise to a separate indebtedness. There was then no question in the case of the effect of the debtor's application of a payment to a partial discharge of an indebtedness not barred when it was made; see *Ramsay* v. *Warner*, 97 Mass. 8, 13; nor any question of the spreading by the debtor of payments made in recognition of a general indebtedness over various items so that a partial payment was made upon each; see *Rowell* v. *Estate of Lewis*, 72 Vt. 163; and as to neither of these situations do we express an opinion. Whether or not the payments constituted an acknowledgment of the whole indebtedness which had accrued depended upon the intent of the decedent in making them, either actual, or as indicated by the natural import of her acts and words. *Lang* v. *Gage*, 65 N. H. 173, 174, 18 Atl. 795; *Blair* v. *Lynch*, 105 N. Y. 636, 638, 11 N. E. 947. Such application as the debtor might see fit to make of them in satisfaction of any of the indebtedness, or as the court would be authorized to make, in the absence of application by the parties, would be of no moment in determining whether they constituted an acknowledgment of a subsisting indebtedness for such charges as had been barred. *Ramsay* v. *Warner, supra; Taylor* v. *Foster*, 132 Mass. 30, 33; *Royston* v. *May*, 71 Ala. 398; *Blake* v. *Sawyer*, 83 Me. 129, 131, 21 Atl. 834; *Aston* v. *Aston*, 188 Ill. App. 12, 16; cases cited, 37 Corpus Juris, 1157, note 51. In the situation before the court the sole question was, did the payments made, in view of anything said by the parties at the time and the circumstances proven, constitute a recognition by the decedent of the charges of the appellant for the entire period of his services as a then subsisting indebtedness.

The appeal contains sixty-two assignments of error, more than fifty of which have to do with claimed errors in the charge. Many of these consist of single sentences or parts of sentences, the effect of which could not be judged without their context, and many others are purely argumentative. All the substantial claims of the appellant could have been readily presented by a few assignments of error, and such an unnecessary multiplication of the reasons of appeal could and ought to have been avoided.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.