W. Lee Weadon v. First National Bank and Trust Company, Administrator, c.t.a. (Estate of Alexander McNab).

Maltbie, C. J., Jennings, Ells, Dickenson and Inglis, Js.

Argued October 14, 1942—decided January 8, 1943.

*David Goldstein,* with whom was *Alvin W. Peck,* for the appellant (defendant).

*William J. Kiernan,* for the appellee (plaintiff).

ELLS, J.   The plaintiff, a physician and surgeon, performed necessary professional services for Violet McNab, first wife of Alexander McNab, the reasonable value of which was $1150.   They were performed in 1933 and 1934 and the items of the account were entered in Dr. Weadon's books as charges against Alexander McNab in the usual course of business, by the bookkeeper, as the services were rendered.   In 1937, 1938 and 1939 the plaintiff rendered services to Alexander McNab and to his second wife, the charges for which were entered in the same manner and amounted to $115.   Dr. Weadon did not at any time render a bill to Alexander McNab or to either wife for any of the services performed from 1933 to 1939 until after the death of McNab, nor did he advise the latter during his lifetime as to the amount of any bill for services.   The plaintiff and his wife were friends of Alexander and Violet McNab.   The reason Dr. Weadon did not render a bill was that he knew McNab's financial condition and that it was useless to render a bill and did not wish to embarrass him; Dr. Weadon also relied on McNab's several oral statements to him that he would bring to him a check for $1000 on the

account; and when the service represented by the 1939 item was rendered Dr. Weadon knew McNab would not live long and did not want to add to his troubles. The services were necessary, and McNab knew that he was indebted to Dr. Weadon for all the items contained in the account and that the amount was considerable. Dr. Weadon expected to be paid for his services, and McNab expected to pay, and made oral promises to pay on account as late as two years prior to death.

The applicable statute, General Statutes, § 6005, reads as follows: "No action for an account, or for a debt due by book to balance book accounts, or on any simple or implied contract . . . shall be brought but within six years next after the right of action shall accrue. . . ." The plaintiff's claim is for a debt due by book to balance book accounts. It is so stated in his claim as presented to the commissioners and in his brief upon this appeal. The controlling question is whether in an action for book debt the statute runs from the last charge. We reviewed the history of our action of book debt in *Reiley* v. *Torkomian*, 78 Conn. 645, 647, 63 Atl. 516. It is clear that where there are a series of charges for services, as in the present case, without any special agreement as to how they shall be paid for, each item gives rise to a separate indebtedness, and hence all such items back of six years are barred. *Hull* v. *Thoms*, 82 Conn. 647, 651, 74 Atl. 925; *Clark* v. *Diefendorf*, 109 Conn. 507, 516, 147 Atl. 33. In such a situation the person rendering the services could, at the conclusion of each item, demand payment and, if refused, bring an action at law. The fact that there are a series of charges cannot change that fact.

The basis of the trial court's decision in allowing the entire claim is that it was based on an open continuous running account, commencing in 1933 and extending

down to the date of the last item in 1939, and is not barred by the Statute of Limitations. Even if it could be considered to be an open account, or an open book account, the court's conclusion is erroneous, for the account was all on one side, and the vital requirement of mutuality is missing. "It has uniformly been held, that distinct and different items of charge, in an open and mutual account, do not constitute separate claims; but that the *claim or debt* is found in the *balance of the account;* and that it is the balance only, that constitutes the claim of the party to whom it is due. When the account is all on one side, it has not the character of mutual accounts, and, so far as the statute of limitations is concerned, the cause of action arises from the date of each item; and they are respectively barred, when more than six years have intervened between their dates and the commencement of the suit." *Hodge* v. *Manley,* 25 Vt. 210, 213, 60 Am. Dec. 253. The reason for the rule as to mutual accounts is "that every new item of credit, or part payment, is an acknowledgment of an open, mutual, and unliquidated account, and is equivalent to a new promise to account, and pay the balance thereon due." *Hodge* v. *Manley,* supra, 214. When payments are made on such an account, the statute runs from the last payment. *Apuzzo* v. *Hoer,* 125 Conn. 196, 199, 4 Atl. (2d) 424; 37 C. J. 865, § 232. In the instant case there was no mutual account, and therefore no new promise to account and pay the balance due. See also *Spencer* v. *Sowers,* 118 Kan. 259, 234 Pac. 972; 37 C. J. 868, § 233. The promises made by McNab to pay the bill cannot avail the plaintiff because they were not in writing as required by § 5611 of the General Statutes in the case of claims against the representatives of a deceased person.

There is error, the judgment is set aside and the case

is remanded with direction to enter judgment for the plaintiff to recover the 1937, 1938 and 1939 items only, with interest.

In this opinion the other judges concurred.