[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Donald T. Dynarski originally sued his father Simon Dynarski and the legal representatives of the estate of his deceased mother, Clara Dynarski. At the present the CT Page 1069 defendants are the legal representatives of the estate of each of the parents and the plaintiff's two sisters, Janet Sudnik, ancillary administratrix, C.T.A. of Mrs. Dynarski's estate, and Irene Erickson who is managing — under the auspices of a Connecticut Probate Court — the mobile home park in Meriden, Connecticut, which is the primary asset of the estates of the two parents.
The plaintiff at the institution of his litigation sought a pre-judgment remedy, and in an affidavit in support thereof alleged that on or about October 1958, at the request of Simon Dynarski and the late Clara Dynarski, he moved to Connecticut from New York to start an outlet for the sale of new mobile homes to complement and expand the Greenwood Trailer Park, an enterprise which his parents owned and operated in Meriden. He further stated in the affidavit that in addition to developing and operating the sales outlet he operated and managed the park at the request and on behalf of Simon and Clara Dynarski without compensation. He further stated that during the approximately thirty (30) years he managed the park enterprise and contributed capital to it, Simon and Clara Dynarski made oral promises to him that upon their retirement from the park or by will if they died before retiring, they would convey to him their respective interests in the park. He estimated that the present value of the park in 1988 to be $2,000,000.00; and he contended that in the alternative he was entitled to $1,000,000.00, the fair value of the services he rendered and reimbursement of the capital improvements he contributed to the park over a period of approximately 30 years from 1958 through 1988.
On February 23, 1989 the plaintiff filed an amended complaint setting forth a five-count cause of action sounding in constructive trust as to all the defendants. It sets forth the promises to convey the park to him in return for his requested uncompensated service and the creation of a fiduciary duty to the plaintiff to fulfill that promise. The second count alleged a breach of the promise of Clara Dynarski to devise her interest in the park to him and the breach by the defendant Simon Dynarski of his promise to him by allowing his sisters to operate the park as his attorneys-in-fact. The third count contends that the plaintiff is entitled to the compensation for the fair value of the services rendered by the plaintiff.
The fourth count alleges the interference by Janet Sudnik and Irene Erickson with the plaintiff's personal and CT Page 1070 business relationship between Clara Dynarski and the plaintiff. It also targets their interference as attorneys-in-fact of Simon Dynarski with his underlying relationship with Simon Dynarski. The fifth count alleges tortious interference with the right of the plaintiff to operate his sales business on the park premises.
The defendant Simon Dynarski filed a counterclaim alleging a constructive or resulting trust concerning real property, cash, a business interest in the distribution of fuel, a business interest in a mobile home sales business and a business interest in Vermont land development. This counterclaim was stricken by the Court (Gaffney, J.) in accordance with the agreement of the parties on April 20, 1989. The plaintiff on August 7, 1990 substituted David Wayne Winter, administrator of the estate of Simon Dynarski who died on May 9, 1990. An amended complaint alleges that by will Simon Dynarski failed to devise his interest in the park solely to the plaintiff as promised and instead devising his interest in the same in trust to the defendants Sudnik, Erickson and the plaintiff in equal shares.
At the outset it must be stated that this case was thoroughly and competently tried by counsel for both the plaintiff and the defendants. The plaintiff was the first witness to take the stand, and he outlined the family history of the Dynarski family from the birth of Simon in 1901 and that of the mother in 1906. He testified that the plaintiff resided in Flushing, New York until 1958 when he was 25 years of age. He attended Virginia Fork Union, a military academy, and the University of Vermont for two years. He worked at Western Electric for four years, and he indicated that there was an enormous lay-off in 1958; and he moved to Connecticut where his parents had been living since 1953 or 1954. He admitted on cross-examination that he had been unemployed for a period of approximately six months from April to October before he moved to Connecticut. He stated that his parents had him come to Connecticut to get him a job. The plaintiff had been in school when his parents mortgaged their home to enable them to buy the trailer park in Meriden. He indicated that there were cash flow problems with the park, and the father kept going back to New York to work in the upholstery business. He also indicated that the father had from time to time attempted to sell the trailer park. There had been no sales operation conducted at the park before 1958, and the plaintiff did all the sales paper work himself. The park had separate books. The plaintiff has lived at the park from 1958 and has worked there and has observed the improvement of the park during those years. CT Page 1071
Both the plaintiff and the father were industrious workers and enterprising businessmen. The plaintiff took excursions with the father regarding the purchase of various properties such as the purchase in Vermont in July 1966 in the Mt. Snow ski area. There was also a Florida purchase in 1968 in the Sarasota area. There appears to be no dispute that the parents vacationed in Florida during the winter months. In the early 1980s the plaintiff's sister Irene started to come to Meriden at the beginning of the "crisis" at the park. At that time the father's health was deteriorating. During this period the mother was involved in the collection of rents as was the plaintiff's sister Irene.
The plaintiff stated that "We were in this thing together. There was no corporation. There was nothing in writing for anybody. It was all family." It has been held that where the family relationship appears the ordinary implication of a promise to pay for services does not arise because the presumption which supports such implication is nullified by the presumption that between members of a household services are gratuitously rendered. Cotter v. Cotter, 82 Conn. 331. And it has been held that to maintain a cause of action in quantum meruit the plaintiff prior to the institution of suit must have presented such a claim to the administrator of the decedent as required by Sec. 581 of the Connecticut General Statutes. Such presentation is essential and is a condition precedent to a recovery against a solvent estate, and a complaint which fails to allege such a presentation is defective. Grant v. Grant, 63 Conn. 530. However a defense of failure to present a claim must be specially pleaded. Raymond v. Bailey, 98 Conn. 201, 209.
The plaintiff usually spoke to the father through the mother. Clara Dynarzki was interested in having the father retire. The mother went with the plaintiff to the office of the accountant regarding a possible buy-out by the plaintiff of the parents' interest in the trailer park. The plaintiff admitted that nothing materialized from these meetings. Donald stated that his sisters knew that they had gone to see John Cobbs (Steward 
Mundy). After the meetings the mother said that she wanted to talk it over with the girls.
The plaintiff admitted that his father was a just and fair man but contends that he was not fair with the plaintiff in his will. He also stated that his mother, Clara Dynarski, had a CT Page 1072 reputation for honesty but contends that his father and mother broke their promise to him to transfer the park to him on their retirement. However he never asked the mother to transfer the park or her interest in the park to him nor did he ask the father or demand or request that the father transfer his interest to the plaintiff. Donald stated that he was not in a position to pay a lump sum to buy out their interest in the park but that he wanted to buy out their interest over a period of time.
Irene Erickson was also called to the witness stand by the plaintiff. She testified that she doesn't remember Donald doing any maintenance work at the park. She stated that she gave up five winters for the benefit of her parents before Irene Erickson's husband died. She testified that she helped with rent collections from 1982 to 1988 at the beginning of every month. She also stated that Janet Sudnik came up to the park every month from 1982 to 1988. Irene said that she never observed Donald work with the father or with Bill Cox. She said that during the 1980's Donald worked only in his sales business and that she never saw Donald work in the park. "I never saw Donald do anything from the beginning to today." She also stated that her mother said that "some day this (park) will belong to you kids." She said that her parents never indicated that they had promised to transfer the park to Donald nor was there any conversation about leaving the park by will to Donald. The deposition of the father Simon would seem to confirm this position. And this even though his mental condition at the time appeared to be seriously impaired.
Bridget Dynarski indicated in her testimony that Mrs. Clara Dynarski indicated to her that she and her husband were turning the business over to her and Don. This is hard to believe in the light of the statements in Exhibits 44 and 45 where she wrote letters to Donald to the effect that "I know that when you came to Connecticut you probably did a lot to get the business off to a good start. However I know that from the time we got married until a few years ago you were a holy terror, you were a terrible husband, father and son." Also "And let me tell you that your father broke his back building that business — not you." Her position at the time of the divorce action was much more antagonistic to that of Donald than it was when she took the stand to testify on his behalf at this trial.
Regarding the plaintiff's claim for remuneration the court was impressed with the evidence of the generosity of Simon and Clara Dynarski to the plaintiff over the years. After CT Page 1073 providing a good education to him, they arranged the setting up of the sales business for him; they provided shelter for him and for his family, they provided customers for the oil business that he conducted; and they provided job opportunities for him in Connecticut, Vermont and Florida; and they paid for his attendance at flight school. And it must be admitted that the plaintiff was "feathering his own nest" at every step along the way in the conduct of his daily operations. One example of this was demonstrated in connection with the purchase by him of trailers or motor homes from residents of the park and the sale of the same to prospective new residents where he made the transaction appear to be two-party transactions whereas they were actually three-party transactions, and the palms of his hands could be seen as having been well greased in the transaction.
The court was impressed that the testimony of the witnesses who did physical work in the park over the years — Mr. Bill Cox, Mr. Pete Hazelwood and Mr. John Gudrain all down played the role of Donald Dynarski in the operation of the trailer park and the performance of any work done by him in the day-to-day operation of the park.
In this case the plaintiff is the only living first party who could testify in this action regarding the alleged promise of the plaintiff's parents. It has been held that the living claimant occupies a position of great advantage by reason of the death of the other party to the transaction, and it is necessary to provide a check against possible imposition and fraud. Clark v. Diefendorf, 109 Conn. 507, 514. However, in this case we have the deposition of the father of the plaintiff Simon Dynarski, impaired though it may be by his deteriorating mental condition at the time the deposition was taken. The court also had the testimony of the plaintiff's two sisters regarding the actions and the words of their father and mother over the years and the denial of the alleged promise to leave the trailer park to the plaintiff alone.
The plaintiff would nullify the words of his parents' wills by his testimony regarding the casual remark that they allegedly made that some day "this property will be yours." These words were correct in the sense which they were spoken because the property is now his along with his sisters even though he would have preferred to be the one hundred percent owner instead of the one-third owner as provided in their wills. CT Page 1074
In the light of all of the evidence the court must conclude that the plaintiff has failed to sustain his burden of proof on all of the counts in his complaint and for that reason judgment must enter in favor of the defendants on each count of the complaint.
O'BRIEN, J.