[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11903
On February 9, 1999[1], the plaintiff, John H. Kolb Sons, Inc. (Kolb), filed a one count complaint against the defendant, GL Excavating, Inc. (GL), seeking to be compensated for insurance services obtained on GL's behalf.
By way of an Answer and Special Defenses (#109), GL alleges that Kolb's claims are barred by a statute of limitation, that GL paid Kolb in full for all insurance services that it contracted for, that Kolb accepted payment in full satisfaction of the claim and that Kolb is barred from recovery by the doctrine of inexcusable delay.
On August 30, September 20, and September 27, 2000, the court heard testimony and took documentary evidence from the parties. Following the court trial, the court requested briefs on the statute of limitations issue. The plaintiff's brief was filed on April 16, 2001; the defendant's brief was filed on May 7, 2001. Based upon the credible evidence, the court finds the following facts by a preponderance of the evidence.
The parties had a long standing business relationship which began prior to 1986 and continued until some point in 1993. The basis of the relationship was an oral agreement that apparently provided that Kolb would obtain insurance coverage for GL, including business liability insurance, auto liability insurance, worker's compensation insurance and bonds for municipal contracts, by paying the premiums for such services. Charges would then be applied to GL's account and GL would make periodic payments on that account. This type of payment scheme is known as an open, running account. Kolb did keep written records of all transactions to this account. (Exhibits 1, 2.)
The parties operated under this arrangement from 1986 until February, 1991. (Exhibit 1.) While GL had been making periodic payments to the account, the balance due in February of 1991 was in excess of $62,000 (the Pre 91 balance). In April, 1991, Kolb began keeping separate records for all transactions on new ledger sheets beginning with a zero balance on April 17, 1991 (the Post 91 balance). (Exhibit 2.) An examination of this exhibit indicates that payments were regularly made and the last entry of March 26, 1993 indicates a payment resulting in a zero balance.
The ledger sheet on the Pre 91 balance does show several credits made after all charges to the account ceased. Witnesses for Kolb testified to an agreement between the parties whereby all payments made after February 1991 would be applied to the Post 91 balance first, and any payment overage would be applied to the Pre 91 balance. This agreement is CT Page 11904 evidenced by Exhibit 17, a letter from Kolb's bookkeeper, Joan Lewis, to Gloria Lineweber of GL. Exhibit 17 begins by explaining certain charges to the Post 91 balance. It closes by acknowledging a $20,000 payment on September 26, 1991 and indicating that this payment will pay off the Post 91 balance, leaving a payment overage of $8367.00 which was to be applied to the Pre 91 balance. Exhibits One and Two clearly show that $11,633.00 was applied to pay off the Post 91 balance and $8367.00 was credited to the Pre 91 balance. Finally, GL does not claim that $8367.00 should have been returned to it nor does it claim that it intended the overage to be applied for any other purpose.[2]
The Post 91 balance of $2675.00 was paid in full on March 26, 1993 with a payment of $4000. In keeping with the agreement between the parties, the overpayment of $825.00 was applied to the Pre 91 balance.[3] At this point; for reasons which are not before this court, Kolb ceased to obtain any further insurance services for GL and the agreement between the parties became executed since all that remained to be done pursuant to their agreement was for GL to pay its Pre 91 balance.
Finally, the court finds that the $800.00 credit applied on February 4, 1994 to the Pre 91 balance in the form of a dividend check from ITT Hartford made payable to GL (Exhibit 11) and dated December 3, 1993 is also strong evidence of the parties intent regarding the Pre 91 balance. At the point that this check was received by Kolb, there was no other balance due to Kolb by GL other than the Pre 91 balance. This court finds that Kolb sent this check to GL for endorsement and that GL did in fact endorse it and returned it to Kolb whereupon it was applied to the Pre 91 balance (Exhibits 12, 13, 14.) A stop payment was placed on this check by ITT Hartford (Exhibit 15) and the credit was later rescinded, but the court does find this particular transaction to be important in deciphering the intent of the parties, particularly GL.
 A. The Applicable Statute of Limitation
The court's research has resulted two cases involving the statute of limitations for running accounts. In both cases, the predecessor to General Statutes § 52-576 is applied without question. See Apuzzo v.Hoer, 125 Conn. 196, 198, 4 A.2d 424 (1939).
Although the alleged agreement in the instant case is oral, General Statutes § 52-581 regarding oral contracts is applied only to executory contracts. "If [52-576] and [52-581] are to be construed to make a harmonious body of law, it is necessary to restrict the latter . . . to executory contracts." (Citation omitted.) Tierney v. AmericanUrban Corporation, 170 Conn. 243, 248, 365 A.2d 1153 (1976). See alsoHitchcock v. Union New Haven Trust Co., 134 Conn. 246, 259, 56 A.2d 655
CT Page 11905 (1947); Nowakowski v. Rozbicki, 39 Conn. Sup. 458, 466 A.2d 353 (1983);Cacace v. Morcaldi, 37 Conn. Sup. 735, 741, 435 A.2d 1035 (1981).
Since "`everything that was to have been done [under the alleged contract] by the plaintiff had been done, and all that remained was to pay him,'" (alteration in original) Id., quoting Campbell v. Rockefeller,134 Conn. 585, 587, 59 A.2d 524 (1948), this case involves an executed agreement. Therefore, General Statutes § 52-576 applies, for a statute of limitation of six years.
 B. Tolling of the Statute of Limitations
In general, "where there are a series of charges for services . . . without any special agreement as to how they shall be paid for, each item gives rise to a separate indebtedness, and hence all such items back of six years are barred." Weadon v. First National Bank Trust Co.,129 Conn. 541, 543, 29 A.2d 779 (1943). In such cases, when payment is made on these accounts, "the statute would run from the last payment made on account." Apuzzo v. Hoer, supra, 125 Conn. 199.
The statute of limitations defense may be "lost by an unequivocal acknowledgment of the debt, such as a new promise, an unequivocal recognition of the debt, or a payment on account." Seaboard BurnerCorporation v. DeLong, 145 Conn. 300, 303, 141 A.2d 642 (1958). "The determination of whether a sufficient acknowledgment has been made depends upon proof that the defendant by an express or implied recognition of the debt voluntarily renounced the protection of the statute." (Internal quotation marks omitted.) Viets v. Marks,10 Conn. Sup. 367, 370 ___ A.2d ___ (1942).
"In the absence of evidence of a contrary intention and of any other controlling circumstances, the law presumes that the entry of payments generally as credits upon an open . . . account, indicates the intentionof the creditor to apply the payments to the earliest items of the account. The rule, although general, is by no means, universal. It is not an artificial or arbitrary principle, but one founded merely on the presumed intention of the parties; and is applicable only where there isno evidence sufficient to show a contrary intention." (Emphasis added; internal quotation marks omitted.) American Woolen Co. v. Maaget,86 Conn. 234, 247-48, 85 A. 583 (1912). "When there is such evidence, the application will be made in accordance with the intent so manifested."Ford Brothers, Incorporated v. The Frederick M. Ward Company, et al.,107 Conn. 425, 430, 140 A. 754 (1928).
The court finds that, although GL never explicitly directed payments to either the Pre 91 or the Post 91 balance, it did intend its CT Page 11906 overpayments to the Post 91 balance on both September 26, 1991 and March 26, 1993 to be applied to the Pre 91 balance. There is no other logical conclusion that this court can draw since at the time of each of these payments, the amount of the payment greatly exceeded the Post 91 balance. Therefore, the payment of March 26, 1993 which was applied in part to the Pre 91 balance is the point from which to begin measuring the six year limitation period of General Statutes § 52-576. Accordingly, this lawsuit is timely.[4]
 C. Intent of Debtor to Acknowledge Debt
"[A] part payment to have the effect of tolling the statute must be `made and accepted as payment of the part of the indebtedness in suit and under such circumstances that it recognizes the whole of the debt as subsisting, so that the law can imply from it a promise to pay the balance.'" Apuzzo v. Hoer, supra, 125 Conn. 200, quoting Clark v.Diefendorf, 109 Conn. 507, 515, 147 A. 33 (1929). "Whether or not the payments [constitute] an acknowledgment of the whole indebtedness which had accrued [depends] upon the intent of the [debtor] in making them, either actual or as indicated by the natural import of [his or] her acts and words." Clark v. Diefendorf, supra, 109 Conn. 516.
The overpayments credited to the Pre 91 balance were made with the full knowledge and acquiescence of GL and indicate an intent on the part of GL to have the overage applied to the Pre 91 balance. There is no other logical reason for GL to make two payments greatly in excess of the Post 91 balance. From this, the court finds that "the natural import" of these acts indicates GL's intent to recognize "the whole of the debt subsisting, so that the law can imply from it a promise to pay the balance." Id.
The court also finds such an intent evident in GL's act of endorsing and returning the $800.00 dividend check to Kolb for credit to the Pre 91 account on February 4, 1994.[5] This is especially convincing given that the Post 91 account had been paid in full since April of 1993. There were no other open accounts between the parties other than the Pre 91 balance. Therefore, from this act the court can also infer an intent on the part of GL to recognize the whole debt and, consequently, imply a promise to pay the balance.
As a final note, GL also claims in its Second and Third Special Defenses that it paid for all services it contracted for and that the plaintiff accepted payment in full and final satisfaction of any claims. The court finds no credible evidence to support either of these claims.
Accordingly, for the foregoing reasons, judgment shall enter in favor CT Page 11907 of the plaintiff, John H. Kolb Sons, Inc., in the amount of $15,557.12 plus all interest.
It is so ordered.
BY THE COURT
Sylvester, J.