[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a complaint in one count dated May 12, 2000, brought by D.A.N. Joint Venture, Limited Partnership to collect on a promissory note (the "Note"). The action is against two defendants', Bongiovanni Group, Inc., a Connecticut corporation and Alan Bongiovanni, an individual. The defendants have filed a special defense alleging that the action is time barred by Connecticut General Statutes § 42a-3-118.
The facts are as follows: On February 5, 1991, Bongiovanni Group, Inc., as maker, and Alan Bongiovanni, as endorser, executed a promissory note in favor of Fleet Bank of Connecticut in the original principal amount of $160,000 (the "note"). The note matured on March 31, 1992, and called for interest at one and one-half percent over the Fleet Bank prime rate, plus an additional two percentage points after default or maturity. The note was endorsed from Fleet Bank, N.A. as successor in interest to Fleet Bank of Connecticut to The Cadle Company; from The Cadle Company to D.A.N. Joint Ventures; from D.A.N. Joint Ventures to Heller Financial, Inc.; and from Heller Financial, Inc. to D.A.N. Joint Ventures, a Limited Partnership, the plaintiff in this case. The signatures of the maker and endorser were authenticated by Alan Bongiovanni. The court examined the original note with the original allonge attached. Copies were admitted into evidence.
The note was not paid on maturity. No principal was ever paid. The Cadle Company acts as servicer for the plaintiff with respect to the loan evidenced by the note. The plaintiff is an affiliate of The Cadle Company. A payment listing and payoff calculation statement concerning the note is in evidence as a business record. The Cadle Company's record keeping system used the major bank prime rate to calculate the interest applicable to the note.
No claim is made for interest for the period before Cadle acquired the note. The total balance as of May 16, 2002, the date of trial, is $310,792.22. The per diem interest amount is $36.67. CT Page 12093
The Bongiovanni Group, Inc. ("BGI") made one payment in 1994, one in 1995, eight in 1996 and seven in 1997. The defendants discussed settlement options on a number of occasions and at least some of these discussions were confirmed in writing.
After Cadle acquired the note, Cadle representatives regularly contacted Alan Bongiovanni in an effort to collect on the note. In the mid 1990's, Bongiovanni Group, Inc. was experiencing financial difficulties, including problems with the Internal Revenue Services. However, Alan Bongiovanni wished to avoid being sued by Cadle and, took steps, to keep Cadle at bay.
In response to a letter dated August 29, 1994, from a Cadle officer threatening suit unless money was received by September 9, 1994, a check for $1,000.00 was received by Cadle on or about September 15, 1994. Between 1994 and 1997 a total of eighteen checks were sent to Cadle by Bongiovanni Group, Inc. all signed by Alan Bongiovanni. None of these checks were accompanied by communications disavowing or in any way reputiating the obligation evidenced by the note.
Between 1994 and 1997 Cadle requested financial statements from the defendants. Alan Bongiovanni furnished the requested information. At various times during the three years discussions occurred between Alan Bongiovanni and Cadle concerning overall resolution of the debt. One such conversation with a Cadle account officer was summarized in a letter dated April 23, 1996, from Alan Bongiovanni to Cadle. It stated in part:
 I am looking to purchase this loan for about 50% of the $160,000.00 principal amount, or $80,000.00, without payment of any of the accrued interest.
The letter went on to say that pending attempts to obtain financing, "I am proposing to send The Cadle Company $500.00 per month as a show of good faith."
In March 1998, the sixth anniversary of the maturity of the note, the prior action on the note commenced by Fleet had been dismissed under the court's dormancy program. The instant action to enforce the note was served on Alan Bongiovanni on May 16, 2000 and on Bongiovanni Group, Inc. on May 17, 2000.
The defendants argue that the action is barred by the Statute of Limitations, pursuant to General Statutes § 42a-3-118 (a) which states: "Except as provided in subsection (e), an action to enforce the CT Page 12094 obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." The plaintiff argues that the statute of limitations was tolled by the partial payments by the defendants. "The basis of the doctrine by which part payment will take a case out of the statute of limitations is that, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. It therefore follows that, to have this effect, the trier must find that it was made and accepted as payment of part of the particular indebtedness in suit and under such circumstances that it recognizes the whole of the debt as subsisting, so that the law can imply from it a promise to pay the balance." Clark v. Diefendorf, 109 Conn. 507, 514-15, 147 A. 83
(1929). "The Statute of Limitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost as a new promise, an unqualified recognition of the debt, or a payment on account. Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact." (Citations omitted; Internal quotation marks omitted.) Zapolskyv. Sacks, 191 Conn. 194, 198, 464 A.2d 30 (1983). "Part payment of a debt by a debtor constitutes an admission by the person obligated to pay, of his liability for the whole debt upon which the partial payment is made, and justifies an inference of a new promise made at that time to pay the portion remaining unpaid. The courts acting upon this admission, and in inferring therefrom the new promise, treat the contract as renewed from the time of the part payment, and the payment as giving a fresh start to the running of the statute." Broadway Bank Trust CO. v. Longley,116 Conn. 557, 564, 165 A. 800 (1933), quoting Murdock v. Waterman,145 N.Y. 55, 63, 39 N.E. 829.
The defendants expressly attempted to compromise with the agency and negotiate a lesser amount to be paid. This attempt did not constitute repudiation of the debt but merely tried to negotiate the payment of less than the full debt. Although the defendants maintain that these payments were made as a good faith effort to continue negotiations with the collecting agency to settle on a smaller balance, the defendant never repudiated or contested the fact that they did in fact owe the full amount of the debt. The defendants' bench brief states: "The April 23, 1996 letter, on which the Plaintiff relies, clearly does not include a promise to pay the balance of the debt, in fact, it specifically indicates that the corporation would be seeking some debt forgiveness . . ." (Defendant's Bench Brief, p. 5). The offer to pay a fraction of the debt implies that the full amount of the debt is indeed owed. The offer to make a discounted payment for an undisputed debt does not constitute CT Page 12095 repudiation of the debt. The plaintiff cites a New York case that directly addresses this issue.[1] Further, the defendants made a number of payments before the April 1996 letter, without any mention of any condition or dispute.
The individual guarantor, Alan Bongiovanni, claims that any acknowledgments of the debt by Bongiovanni Group, Inc. are ineffective to toll the statute of limitations as to him. However, all of the checks constituting the partial payments were signed by Alan Bongiovanni himself and all of the communications acknowledging the debt (even if those communications can be construed as being made only by Bongiovanni Group, Inc.) were carried out by Bongiovanni Group, Inc. through Alan Bongiovanni as its President. Connecticut law is clear that an acknowledgment of a debt by one obligor is ineffective to toll the statute of limitations as to a co-obligor only where the co-obligor does not know of or consent to the acts acknowledging the debt. Apuzzo v.Hoer, 125 Conn. 196, 202, 204 (1930), or where the co-obligor "does not authorize, participate or acquiesce in them. Broadway Bank and TrustCompany v. Longley, supra 116 Conn. at 562. Since all the checks were signed by Alan Bongiovanni, and since he personally signed the letters and personally participated in the phone calls regarding the debt, there is no question that he knew of, participated in and acquiesced in these acts.
The court concludes that the defendants did not repudiate the debt and that the statute was tolled by the partial payments and is therefore not barred by the statute of limitations.
The plaintiff asserts the defendants are estopped from claiming the benefit of the statute of limitations; that they induced the creditor by partial payments and communications evidencing a willingness to try to work out a debt, to refrain from initiating litigation until the statute runs; and then, after it runs, claim the benefit of the Statute of Limitations. The defendants in their briefed response to this claim point out that there is no evidence to support plaintiff's claim that the defendants intentionally mislead the plaintiff causing the plaintiff to forfeit its rights to collect on the note. It should be pointed out that the plaintiff brought the instant action two and one-half years after Cadle received its last payment from the defendants. The plaintiff has the burden of proving its claim of equitable estoppel by a preponderance of the evidence. This the plaintiff has failed to do.
Finally the defendants pled as a Second Special Defense that the plaintiff limited partnership is not registered with the Connecticut Secretary of State and is therefore barred from maintaining any action, CT Page 12096 suit or proceeding in any court of this state. No evidence was presented during the trial on this issue. Therefore, the court deems it abandoned.
Judgment may enter for the plaintiff in the amount of $315,155.95. This amount includes interest at the rate of $36.67 for each day between May 16, 2002, and the date of this judgment.
Hennessey, J.